[No. 34729. Department One. January 15, 1959.]

PHILIP F. DUPLANTY, *Respondent*, v. MATSON NAVIGATION COMPANY, *Appellant*.[1]

[1]Reported in 333 P. (2d) 1092.

*Bogle, Bogle & Gates* and *Edward S. Franklin*, for appellant.

*Levinson & Friedman*, for respondent.

FINLEY, J.—Defendant appeals from a verdict of the jury awarding the plaintiff twenty-five thousand dollars in an action brought for damages sustained as the result of personal injuries.

By its first assignment of error, appellant challenges the sufficiency of the evidence to support the verdict. From the

record the jury could have found the facts to be as follows: The ship "Hawaiian Logger," owned by appellant, was docked at Kalui, Maui, Territory of Hawaii. Respondent was employed by appellant as an oiler on the ship. The harbor at Kalui is formed by a breakwater, and ships tied to the dock in the harbor are subject to and move or surge with the action of sea swells and tides. The "Hawaiian Logger," while berthed at the dock, would move out and back sometimes as much as three to five feet. A thirty-four-foot steel gangplank extended from the main deck of the ship to the dock below to provide a means of ingress and egress. The gangplank had seven stanchions, or steel uprights, which were inserted on each side of the plank. Through these stanchions, three manila hand lines, or manropes, extended and led from the deck of the "Hawaiian Logger" to the end of the plank. Because of the surging of the ship, the gangplank was secured at the vessel end with bolts, and at the dock end it rested on a roller. This enabled the gangplank to move with the action of the sea and the ship.

On the day of the accident, respondent, returning to the ship after a short absence, was carrying a package in his left hand. As he started up the gangplank, it was at an angle of about forty-five degrees, with its top approximately thirty feet above the dock. He held on to the hand line with his right hand. He testified that, when he had ascended about two thirds of the way, "All of a sudden there was a jerk like the ship had moved, and the gangplank, which threw me off balance." He grabbed the right hand line more tightly, but, because of excessive slack in the rope, it gave way, and he fell to his right and over the side of the plank to the cement dock, twenty feet below.

Respondent alleged that appellant was negligent in two particulars: First, in allowing the hand lines to become so slack that they did not afford respondent the needed support; second, in failing to place a gangway net beneath the gangplank for protection against accidents of this nature.

The evidence on both issues was in sharp conflict. The jury could have found that, just prior to the accident, the

hand lines had been allowed to get too slack, and that the chief mate of the ship had been notified of this fact.

■■ Under the law, there is a duty on the part of the vessel owner to supply its employees with a safe place to work. This includes the gangplank maintained by the owner for his crew. *Sanford v. Caswell* (1953), 200 F. (2d) 830. There is substantial evidence in the record to support a finding by the jury that appellant was negligent in maintaining the gangplank, and that its negligence proximately caused respondent's injuries.

■■ Appellant contends that respondent was guilty of contributory negligence as a matter of law. Since this action was brought under the Jones Act, contributory negligence does not bar recovery. The rules of comparative negligence apply, and the jury was properly instructed on these rules. In any event, we are not prepared to hold as a matter of law that respondent was guilty of contributory negligence. He testified that he did not notice that the lines were too slack until he grabbed them tightly when the ship surged. It was a question of fact for the jury as to whether the slack should have been apparent before respondent grabbed the ropes and placed some stress on them.

Assignments of error Nos. 3, 4 and 5 relate to the failure of the trial court to give three of appellant's proposed instructions. Proposed instruction No. 4 stated that a person may not cast the burden of his own protection upon another, but that he owes this duty to himself, and that such person must use his own intelligence and faculties for his own protection. Proposed instruction No. 5 stated that a shipowner is not an insurer of the safety of seamen, and that said owner is liable only for his own negligence. Proposed instruction No. 20 stated that under the law one is charged with the duty of seeing those objects or persons which he would have seen had he been exercising reasonable care.

■ Appellant took no exception to the instructions given by the trial court. These instructions were complete and proper. It was not error to refuse to give appellant's pro-

posed instructions which were argumentative and slanted.

Appellant next urges that the verdict was so excessive as to indicate passion and prejudice.

As a result of his fall, respondent sustained an intertrochanteric fracture of his left hip. He was confined to the hospital for several weeks and was under treatment for eleven months. During this period, he suffered great pain. At the time of the trial, he was still unable to perform the full duties of his employment. As a result of the injury which respondent received, it was necessary for a steel plate and pin to be placed in his hip; if it is ever necessary for the plate and pin to be removed—and this is not unlikely—additional surgery will be required. Respondent's physician testified that the respondent would always have trouble with his hip, and that he would never be able to perform the full duties which are required in his occupation as an oiler.

■■ In an action for personal injuries, where damages are proved, the amount of damages to be awarded is primarily within the province of the jury, and the court is reluctant to interfere with such an award, when fairly made. *Holmes v. Toothaker* (1958), 52 Wn. (2d) 574, 328 P. (2d) 146. In the instant case the verdict of the jury is not so excessive as to have unmistakably been the result of passion and prejudice.

■ Appellant argues in its last assignment of error that the trial court erred in failing to strike from respondent's cost bill the items for traveling expense incurred by counsel for respondent in taking out-of-state depositions. It is undisputed that these depositions were taken not for discovery purposes, but for use at the trial.

RCW 4.84.090 provides, in part:

" . . . The prevailing party, in addition to allowance for costs, as provided in RCW 4.84.080, shall also be allowed for all necessary disbursements, including the fees of officers allowed by law, the fees of witnesses, the necessary expenses of taking depositions, . . . "

It is within the discretion of the trial court to determine what expenses are *necessary* within the meaning of the

statute. In the present case there has been no abuse of this discretion.

The judgment of the trial court should be affirmed. It is so ordered.

MALLERY, HILL, OTT and HUNTER, JJ., concur.